IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.

**ROBERT J. RUIZ**

  Plaintiff,

v.

**WOODWARD, INC., a Delaware Corporation**

  Defendant.

---

## COMPLAINT AND DEMAND FOR JURY TRIAL

---

  Plaintiff, Robert Ruiz ("Mr. Ruiz" or "Plaintiff"), by his undersigned counsel, files his Complaint against Defendant, Woodward, Inc. ("Woodward" or "Defendant") alleging as follows:

### I.  PARTIES

1. At all relevant times to the allegations contained herein, Mr. Ruiz was a citizen of the United States of America and resided in the state of Colorado.

2. Mr. Ruiz was a full-time employee of Woodward performing his job duties as a Global Supply Manager.

3. Woodward is a Delaware corporation with its corporate headquarters and principal place of business located at 1081 Woodward Way, Fort Collins, CO 80524 and its Drake campus located at 1000 E. Drake Road, Fort Collins, CO 80525.

4. Woodward is a United States government contractor, contracting with numerous governmental entities such as NASA, the Department of Defense, Homeland Security and

Transportation.

## II.   JURISDICTION AND VENUE

5.      This court has original jurisdiction of the subject matter of the allegations contained in

the complaint pursuant to 28 U.S.C. §§ 1331 and 1332, 42 U.S.C. § 12117.

6.      Venue is proper in this Court under 28 U.S.C. § 1391(b) because all or substantially all

the events or omissions giving rise to claims asserted by Plaintiff occurred within the state of

Colorado and Defendant is located in the state of Colorado.

## III.   ADMINISTRATIVE PROCEDURES

7.      On or about September 19, 2016, Mr. Ruiz filed a Charge of Discrimination, Charge No.

541-2016-02325, with the U.S. Equal Employment Opportunity Commission ("EEOC"),

alleging employment discrimination.

8.      Plaintiff received his Notice of Right to Sue, dated September 25, 2017.

9.      Mr. Ruiz filed his civil action within ninety days of his receipt of the Notice of Right to

Sue.

10.     Mr. Ruiz has complied with his administrative prerequisites to filing this civil action.

## IV.   GENERAL ALLEGATIONS

11.     Mr. Ruiz incorporates by reference and re-alleges each and every necessary allegation

and claim for relief with the same force and effect as if fully set forth herein.

12.     Mr. Ruiz is a 69-year-old Hispanic male.

13.     In 2007, Mr. Ruiz was diagnosed with renal cell carcinoma, a form of cancer.  The cancer

required the removal of one of his kidneys.

14.     Mr. Ruiz has Stage 3 Chronic Kidney Disease.

15.     Mr. Ruiz also has endocrine complication of CKD of secondary hyperparathyroidism due

to the difficulty his only remaining kidney has in excreting dietary phosphorous.

16.     Due to this condition, Mr. Ruiz's diet and exercise routine are extremely important.

17.     Mr. Ruiz must also avoid environments that have hazardous materials because his kidney cannot adequately flush toxins from his body.

18.     On August 16, 2010, Woodward hired Mr. Ruiz as a Global Supply Manager ("GSM").

19.     Mr. Ruiz was an employee in good standing, adequately performed his job duties, and was not subject to any discipline corrective action programs during his employment at Woodward.

20.     Around August 2012, Mr. Ruiz filed an ethics complaint against a new manager, Mark Alvis ("Mr. Alvis").  His complaint included an allegation of ethnic harassment.

21.     Mr. Alvis retaliated against Mr. Ruiz by giving him with an inferior performance review.

22.     As a result, Mr. Ruiz was assigned suppliers with low part numbers, low quantities required per part, and low revenue with no Woodward engineering support.  These suppliers were considered hard and difficult because of the old technology required to manufacture these parts.

23.     In 2015, during one-on-one meetings with Mr. Alvis, Mr. Alvis would ask Mr. Ruiz where he saw himself five years from now and whether Mr. Ruiz still wanted to be working at his age.

24.     Mr. Alvis would also state that Mr. Ruiz was too old for his job.

25.     Mr. Alvis also made these comments in preparation discussions for Mr. Ruiz's yearly review in 2015.

26.     Mr. Ruiz asked Mr. Alvis why Mr. Alvis was asking whether Mr. Ruiz would still want to be working at his age.  Mr. Alvis never answered.

27.     In April and May 2015, one of Mr. Ruiz's physicians, Doctor Dan Rubin ("Dr. Rubin"), discovered several biochemical and physiological abnormalities in Mr. Ruiz's blood work.

28.     Mr. Ruiz's physician, Dr. Rubin, provided Mr. Ruiz with a medical note to provide to Woodward recommending a travel restriction of six months for Mr. Ruiz.

29.     Dr. Rubin's note described the nature, severity, and duration of Mr. Ruiz's impairment as well as the activities it limited.

30.     On May 10, 2016, Mr. Ruiz requested a reasonable accommodation to either limit and/or reschedule any travel due to his disability by submitting Dr. Rubin's note to Mr. Alvis.

31.     Mr. Alvis then forwarded the note to the Human Resources ("HR") representative, Amy MacNaughton ("Ms. MacNaughton").

32.     For the almost ten (10) weeks, Mr. Ruiz received no response or acknowledgement regarding Dr. Rubin's note from either HR or Mr. Alvis.  During those approximately 10 weeks, Mr. Ruiz consistently approached Mr. Alvis, inquiring into the status of his request for a reasonable accommodation of limiting and/or rescheduling his travel for six months.

33.     On June 20, 2016, Mr. Ruiz was asked to meet with Woodward company intake nurse Judy Latimer ("Ms. Latimer").

34.     On June 27, 2016, Mr. Ruiz met with Woodward's physician who stated that the May 10, 2016 medical note from Dr. Rubin was insufficient and Mr. Ruiz needed to provide additional medical information.  Woodward's physician did not state why Dr. Rubin's medical note was insufficient documentation.

35.     The very next day, June 28, 2016, Mr. Ruiz provided medical note from Doctor Richard Simmons ("Dr. Simmons") to Woodward regarding his condition.

36.     However, Woodward was not satisfied with Dr. Simmons' letter either and requested

additional information.

37.     Mr. Ruiz provided additional information regarding his disability from Dr. Simmons to Woodward on June 30, 2016.

38.     Still not satisfied with any information that Mr. Ruiz provided in the three medical statements from two separate doctors, Woodward then had Mr. Ruiz examined by its own physician on July 6, 2016.  After the examination, Woodward's physician provided a statement supporting the prior medical documentation detailing Mr. Ruiz's disability.

39.     The travel restriction recommended by Dr. Rubin, Dr. Simmons, and Woodard's physician would limit Mr. Ruiz's travel to third world countries where exposure to manufacturing chemicals is not as strictly monitored.  Furthermore, in the countries that Mr. Ruiz's doctors were restricting him from traveling to, the water and air quality is below United States Environmental Protection Agency standards.

40.     Mr. Alvis did not provide Mr. Ruiz with a Reasonable Accommodation Request Form to complete until July 18, 2016, almost 10 weeks after Mr. Ruiz initially requested a reasonable accommodation to either limit and/or reschedule any travel due to his disability.

41.     Mr. Ruiz completed the form and returned it the next working day.

42.     On July 22, 2016, during the interactive process, Matt Taylor ("Mr. Taylor"), Corporate Vice President, instituted a "company-wide travel restriction" prohibiting travel and emphasizing the use of video conference and other virtual meeting requirements for the next 18 months.

43.     The imposition of the company's travel restriction should have resolved Mr. Ruiz's reasonable accommodation request.  However, he was contacted by Ms. MacNaughton on August 2, 2016 and informed that he was no longer qualified for his position.  Ms. McNaughton also informed Mr. Ruiz that there were no available positions with the company that he was

qualified to perform.

44.     Mr. Ruiz requested a reasonable accommodation of having suppliers come to Fort

Collins.  Mr. Ruiz also suggested a reasonable accommodation of having some, not all, of his

travel limited or rescheduled.

45.     Mr. Ruiz never refused any request from management for him to travel.

46.     Mr. Ruiz also requested a reasonable accommodation of providing engineering support to

his accounts, an act routinely granted by other Global Supply Managers.  Mr. Ruiz also

suggested teleconferencing with his supplier base or having suppliers come to the Woodward

headquarters for business discussions.

47.     Furthermore, Mr. Ruiz was also qualified for other positions within the company.  The

Global Supply department Mr. Ruiz reported to was undergoing a reorganization.  Current and

new positions created by the reorganization were available.  Furthermore, the Company

historically created positions in previous reorganizations.

48.     Ms. MacNaughton stated that she would discuss Mr. Ruiz's request to be moved to a

position created or made available due to the reorganization in the Global Supply department.

She also stated that she would discuss Mr. Ruiz's request for some, not all, of his travel to be

limited or rescheduled.

49.     Ms. MacNaughton was supposed to have discussions about Mr. Ruiz's requests for

reasonable accommodation with the global supply management team the week of August 2,

2016.

50.     Her last correspondence to Mr. Ruiz was in an e-mail from Carol Brungardt ("Ms.

Brungardt") with the subject line, "Options."

51.     Mr. Ruiz's requests for reasonable accommodation were not reasonably considered by

Woodward management or HR and the Company failed to engage in good faith in the interactive process required by the ADA.

52.    On August 4, 2016, Mr. Ruiz's employment was terminated.

### V.    FIRST CLAIM FOR RELIEF
**(Disability Discrimination, Wrongful Termination under the ADA in violation of 42 U.S.C. §12112(a))**

53.    Mr. Ruiz incorporates by reference and re-alleges each and every necessary allegation and claim for relief with the same force and effect as if fully set forth herein.

54.    At all relevant times to the allegations in this complaint, Woodward was an employer within the meaning of and covered by, 42 U.S.C. §§ 12111(2) and (5)(A).

55.    At all relevant times to the allegations in this complaint Plaintiff was an employee of Defendant within the meaning of 42 U.S.C. § 12111(4).

56.    Mr. Ruiz has a disability, Stage 3 Chronic Kidney Disease ("CKD"), that substantially limits one or more major life activities, including but not limited to his major bodily functions of his excretory and endocrine systems.

57.    Mr. Ruiz has only one kidney and his endocrine system is substantially limited due to complications of his CKD with secondary hyperparathyroidism.  Plaintiff's CKD substantially limits Plaintiff's major life activities of sleeping, walking, breathing and concentrating.

58.    Mr. Ruiz was qualified for the position of Global Supply Manager.

59.    Mr. Ruiz could perform, either with or without reasonable accommodation, the essential functions of his job.

60.    Woodward discriminated against Mr. Ruiz in violation of 42 U.S.C. §12112 by:

      a.   Not timely engaging in the interactive process;

      b.   Not allowing Mr. Ruiz to restrict his travel with his current job;

      c.   Not allowing Mr. Ruiz to obtain a different position that did not require travel;

      d.   Not allowing the "company-wide travel restriction" to apply to Mr. Ruiz, thus making the need for his accommodation moot; and

      e.   Terminating his employment because of his disability.

61.    Woodward terminated Mr. Ruiz due to his disability.

62.    As a direct and proximate result of the intentionally discriminatory acts and practices of Defendant, or its agents, Plaintiff has suffered and will continue to suffer injury, including past and future loss of income and other employment benefits, severe emotional pain and suffering, mental anguish, loss of enjoyment of life, and other past and future pecuniary losses.

## VI.    SECOND CLAIM FOR RELIEF
### (Disability Discrimination, Failure to Hire under the ADA in Violation of 42 U.S.C. § 12112(a))

63.    Mr. Ruiz incorporates by reference and re-alleges each and every necessary allegation and claim for relief with the same force and effect as if fully set forth herein.

64.    At all relevant times to the allegations in this complaint, Woodward was an employer within the meaning of and covered by, 42 U.S.C. §§ 12111(2) and (5)(A).

65.    At all relevant times to the allegations in this complaint Plaintiff was an employee of Defendant within the meaning of 42 U.S.C. § 12111(4).

66.    Mr. Ruiz has a physical disability that substantially limits one or more major life activities.

67.    Mr. Ruiz could perform, either with or without reasonable accommodation, the essential functions of his job.

68.    While he was employed by Woodward, Plaintiff informed Defendant of his disability.

69.    While he was employed by Woodward, Plaintiff requested a reasonable accommodation

by limiting his travel.

70.     Mr. Ruiz was eligible for other non-traveling positions with Defendant, but was not considered for those positions.

71.     Woodward discriminated against Mr. Ruiz in violation of 42 U.S.C. §12112 by failing to hire him due to his disability.

72.     Woodward took adverse employment actions against Mr. Ruiz due to his disability or perceived physical impairment.

73.     Defendant acted with malice, indifference, and an unsubstantiated assumption of Mr. Ruiz's inability to work or fit into the non-disabled classification.

74.     As a direct and proximate result of the intentionally discriminatory acts and practices of Defendant, or its agents, Plaintiff has suffered and will continue to suffer injury, including past and future loss of income and other employment benefits, severe emotional pain and suffering, mental anguish, loss of enjoyment of life, and other past and future pecuniary losses.

## VII.    THIRD CLAIM FOR RELIEF
### (Disability Discrimination, Failure to Accommodate Under the ADA in Violation of 42 U.S.C. §§ 12102, 12112(b)(5)(A))

75.     Mr. Ruiz incorporates by reference and re-alleges each and every necessary allegation and claim for relief with the same force and effect as if fully set forth herein.

76.     Mr. Ruiz had a "disability" within the meaning of 42 U.S.C. § 12102.

77.     Mr. Ruiz's disability substantially limits one or more major life activities, including but not limited to sleeping, walking, breathing, and concentrating.

78.     Due to Mr. Ruiz's disability, exposure to toxic and hazardous materials through consumption of air, water, and food substantially limits one or more major life activity.

79.     Mr. Ruiz informed Woodward of his inability to travel to certain countries and requested

a reasonable accommodation to limit or reschedule his travel, provide engineering support to his accounts, and/or conduct conference calls with suppliers.

80.     Woodward could have accommodated Mr. Ruiz because travel was not an essential function of his job, especially after the implementation of a company-wide travel ban.

81.     Woodward could have accommodated Mr. Ruiz by modifying his job to provide engineering support to his accounts or conduct conference calls with suppliers, practices often done by other Global Supply Managers.

82.     Woodward failed to provide an accommodation and terminated Mr. Ruiz.

83.     As a direct and proximate result of the intentionally discriminatory acts and practices of Defendant not to reasonably accommodate Mr. Ruiz's disability, Plaintiff has suffered and will continue to suffer injury, including past and future loss of income and other employment benefits, severe emotional pain and suffering, mental anguish, loss of enjoyment of life, and other past and future pecuniary losses.

### VIII.   FOURTH CLAIM FOR RELIEF
### (Retaliation Under the ADA in Violation of 42 U.S.C. §§ 12203(a), 12112(a), and 12112(b)(5) and (6))

84.     Mr. Ruiz incorporates by reference and re-alleges each and every necessary allegation and claim for relief with the same force and effect as if fully set forth herein.

85.     At all relevant times to the allegations in this complaint, Woodward was an employer subject to the requirements of the ADA as stated in 42 U.S.C. §12111(5).

86.     At all relevant times to the allegations in this complaint, Mr. Ruiz was an employee of Defendant within the meaning of 42 U.S.C. § 12111(4).

87.     At all times relevant to this case, Mr. Ruiz had a disability as defined by 42 U.S.C. §12102(2) and was qualified for his job.

88.     Woodward retaliated against Mr. Ruiz based on his disability by taking unreasonable delay in responding to his reasonable request for accommodation.

89.     Further, Woodward requested and received three (3) different medical statements from Mr. Ruiz's physicians and required Mr. Ruiz to be examined by its own physician.

90.     Woodward terminated Mr. Ruiz's employment effective on August 4, 2016.

91.     Mr. Ruiz was terminated in retaliation for his reasonable requests for accommodation for his disability.

92.     Woodward acted with reckless indifference to Mr. Ruiz's federally protected rights with knowledge it was acting in violation of federally protected rights.

93.     As a direct and proximate result of the intentionally discriminatory acts and practices of Defendant, Plaintiff has suffered and will continue to suffer injury, including past and future loss of income and other employment benefits, severe emotional pain and suffering, mental anguish, loss of enjoyment of life, and other past and future pecuniary losses.

## IX.     FIFTH CLAIM FOR RELIEF
### (Age Discrimination in Violation of 29 U.S.C. § 623)

94.     Mr. Ruiz incorporates by reference and re-alleges each and every necessary allegation and claim for relief with the same force and effect as if fully set forth herein.

95.     Mr. Ruiz was 68 years of age at the time of his termination.

96.     Mr. Ruiz was qualified for his position as Global Supply Manager.

97.     Despite his qualifications, Mr. Ruiz was terminated.

98.     Mr. Ruiz's supervisor told him he was too old for his job and was asked how much longer he planned on working.

WHEREFORE, Plaintiff Mr. Ruiz respectfully requests this court to grant the following relief:

a)  Award Plaintiff Mr. Ruiz all damages to which he is entitled, including, but not limited to back pay, front pay, benefits and reinstatement pursuant to applicable laws, including without limitation, 42 U.S.C. §§ 2000e-4-6, 2000e-8, 2000e-9, 42 U.S.C. § 12117, and 29 U.S.C. § 626(b);

b)  Award compensatory and punitive damages against Defendants pursuant to applicable statutes, including, without limitation under the ADA, and damages available under 42 U.S.C. § 1981a;

c)  An award of liquidated damages pursuant to 29 U.S.C. § 626(b);

d)  Award attorney fees and costs pursuant to applicable statutes, including, without limitation to the fullest extent permitted by law, 42 U.S.C. 2000e-5(k), 42 U.S.C. §§ 1981(a), 42 U.S.C. § 12205, and 29 U.S.C. §§ 626(b) and 216;

e)  An award for pre-judgment and post judgment interest to the fullest extent permitted by law; and

f)  Grant Plaintiff Mr. Ruiz such other equitable and further relief as to this court appears necessary and proper, including such relief available under 29 U.S.C. § 626(c) and 42 U.S.C. § 2000e-5(f).

## **Demand for Jury Trial**

Plaintiff, Robert Ruiz, hereby demands a trial by jury.

*s/ Thomas J. Arckey*
Thomas J. Arckey
*s/ Allison L. Derschang*
Allison L. Derschang
ARCKEY & ASSOCIATES, LLC
6465 Greenwood Plaza Blvd., Suite 250
Centennial, CO  80111
(303) 798-8546
(303) 798-4637 fax
Email:  tja@arlaw.us; aderschang@arlaw.us
Attorneys for Plaintiff